UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ETHEL BRADLEY,
o.b.o J.M.G., a Minor,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:16-CV-223

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security finding Plaintiff was no longer entitled to disability benefits. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that J.M.G., the minor claimant, is no longer disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

J.M.G. was twelve years of age on the date of the administrative law judge's (ALJ) decision. (PageID.54, 144.) Plaintiff first applied for Supplemental Security Income benefits on October 5, 2005. (PageID.261–264.) Finding J.M.G. was disabled due to speech and language deficits, this application was granted in a decision dated March 1, 2007, with an onset date of September 1, 2005. (PageID.57, 60.) A subsequent review determined that J.M.G. had experienced

an improvement in his condition. (PageID.144–145). Accordingly, J.M.G.'s disability was deemed to have ended as of June 22, 2012. (PageID.144).  Plaintiff thereafter requested an administrative hearing, and on February 18, 2015, appeared at a hearing during which time both Plaintiff and J.M.G. testified.  (PageID.82–130.) On March 24, 2015, ALJ Michael Condon issued his decision finding that Plaintiff was no longer disabled. (PageID.54–82.)  On January 13, 2016, the Appeals Council denied review, making it the Commissioner's final decision.  (PageID.31–33.)  This action followed.

## ALJ'S DECISION

Federal law obligates the Commissioner to periodically review whether a disabled child continues to be eligible for disability benefits. *See* 42 U.S.C. § 1382c(a)(3)(H)(ii)(I).  The Social Security regulations articulate a three-step sequential process by which determinations of continuing disability are made.  *See* 20 C.F.R. § 416.994(a).  The first step is to determine whether the child has experienced medical improvement[1] "in the impairment(s) [he] had at the time of [the] most recent favorable determination or decision." 20 C.F.R. § 416.994(b)(1); *Tubbs v. Comm'r of Soc. Sec.*, No. 1:11-cv-1046, 2013 WL 1305290, at *2 (W.D. Mich., Mar. 28, 2013).  If the child has not experienced any medical improvement, his disability will be deemed to continue unless an exception to the medical improvement rule applies.[2] 20 C.F.R. § 416.994(b)(1); *Tubbs*, 2013 WL 1305290, at *2–3.

If the child has experienced medical improvement, it must then be determined

---

[1] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

[2] These particular exceptions articulate circumstances in which a claimant's disability will be deemed to have terminated despite the absence of medical improvement.  *See* 20 C.F.R. § 416.994a(e)-(f).

whether "the impairment(s) that [the Commissioner] considered at the time of [her] most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time." 20 C.F.R. § 416.994a(b)(2); *Tubbs*, 2013 WL 1305290, at *3. If the impairment(s) continues to meet or equal in severity the listed impairment in question, the claimant's disability will continue. Otherwise, the analysis proceeds to step three. 20 C.F.R. § 416.994a(b)(2); *Tubbs*, 2013 WL 1305290, at *3.

At step three, the Commissioner must determine whether the claimant is currently disabled pursuant to the rules for determining disability for children. 20 C.F.R. § 416.994a(b)(3); *Tubbs*, 2013 WL 1305290, at *3. A child is considered disabled if he suffers from a severe impairment or combination of impairments which meet, medically equal, or functionally equal an impairment identified in the Listing of Impairments. 20 C.F.R. § 416.994a(b)(3); *Tubbs*, 2013 WL 1305290, at *3.

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* Nevertheless, the burden of proof to establish that a claimant has experienced a medical improvement which supports a termination of benefits lies with the Commissioner. *See, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 764–65 (6th Cir., Sept. 7, 2007); *Couch v. Comm'r of Soc. Sec.*, 2012 WL 394878 at *10 (S.D. Ohio, Feb. 7, 2012).

The ALJ observed that the most recent favorable determination finding that J.M.G. was disabled was the determination dated February 14, 2006. (PageID.60.) The ALJ further

observed that as of this date, J.M.G. was found to suffer from a speech and language impairment which were found to functionally equal the listings. Specifically, J.M.G. had an extreme limitation in the domain of acquiring and using information. (PageID.60–61.) With respect to the subsequent termination of benefits, the ALJ found as follows:

> The undersigned finds that the claimant's language issues are mild at this time and show evidence of improvement. On May 23, 2012, the claimant underwent a speech and language disability evaluation, and the results show improvement since the CPD. His Core Language yielded a low Average standard score of 91, which is a 27-percentile ranking. Receptive Language yielded a below-Average standard score of 81, which is a 10-percentile ranking. Expressive Language yielded an Average standard score of 90, which is a 39-percentile ranking. Language Memory yielded an Average standard score of 94, which is a 34-percentile ranking. Pragmatic language was functional for testing although mildly impulsive behavior was observed. His word level articulation yielded a Low Average standard Score of 86, which is a 7-percentile ranking. Stimulability for correct production of errored phonemes in isolation was 100 percent. Voice production and verbal fluency were both in the normal range. A rapid speech rate and reduced articulation precision were noted during connected speech. Conversational intelligibility with all listeners was 90 percent with known context and 80 percent with unknown context. Repetition improved intelligibility by 10 percent to 20 percent (Ex. 5F). The claimant's speech and language pathologist noted that the claimant last received speech and language services in 2006. She reported that the claimant had no speech or language problem that has ever been brought to her attention (Ex. 4F).
>
> On June 1, 2012, the claimant['s] second grade teacher completed a Teacher Questionnaire regarding her observations of the claimant's functioning. In all of the functional domains, she reported that the claimant had no problems. She noted that almost all of the claimant's speech was understandable on the first attempt regardless of whether the topic was known or unknown. The teacher noted that she had no academic or behavioral issues with the claimant and that he is one of the top readers in her class. She reported that the claimant was very smart, very well behaved, very respectful, honest, and a "great kid" (Ex. 9E/13). On September 23, 2013, the school social worker completed a Teacher Questionnaire. Although she described other

>limitations that will be addressed below, her observations show an improvement in the speech impairment. She described no limitations in Acquiring and Using Information and that almost all of the claimant's speech was understandable on the first attempt regardless of whether the topic was known or unknown (Ex. 17E).
>
>The Language impairments noted in the CPD are from 2006, and there has been an obvious improvement since that time. Language and speech delays were the primary reason for the initial disability finding. Those have obviously improved significantly to the point that now, as a much older child, he is communicating very well and very clearly and did so at the hearing.

(PageID.61.)

>The ALJ continued his analysis by further determining that:
>
>1.   Since June 22, 2012, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments;
>
>2.   Since June 22, 2012, the claimant has had the following severe impairments: attention deficit hyperactivity disorder (ADHD); overanxious disorder of childhood; and reactive attachment disorder of early childhood; and
>
>3.   Since June 22, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

(PageID.62–68.)

Next, the ALJ was required to determine whether J.M.G. suffered from an impairment that was the functional equivalent of a listed impairment. In doing so, the ALJ was required to evaluate how J.M.G. functioned in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)–(b). To be considered disabled, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The

six domains of functioning are:

>  (I)   acquiring and using information,
>  (ii)  attending and completing tasks,
>  (iii) interacting and relating with others,
>  (iv)  moving about and manipulating objects,
>  (v)   caring for yourself, and
>  (vi)  health and physical well-being.

20 C.F.R. § 416.926a(b)(1).   The ALJ found that since June 22, 2012, J.M.G. experienced "less than marked" limitations in acquiring and using information, attending and completing tasks, and interacting and relating to others. (PageID.72–73.) J.M.G. further had no limitations in the areas of moving about and manipulating objects, caring for himself, and in health and physical well-being. (PageID.74.)   Accordingly, the ALJ determined that J.M.G. did not functionally equal a listed impairment and, having completed the analysis, entered a decision finding that J.M.G.'s disability ended as of June 22, 2012.  (PageID.74.)

### DISCUSSION

**1.     The ALJ's Credibility Determination is Supported by Substantial Evidence.**

At the administrative hearing, Plaintiff testified that although J.M.G. was no longer receiving treatment for his speech and language deficits, he was currently being treated for anger issues. (PageID.90.)  She stated that J.M.G. cried a lot, ate his fingernails, and had a nervous condition manifested by consistent shaking of his legs. (PageID.88.) At home he was angry, talked back, and ran through the house.  (PageID.94.)   He ran into walls and laughed to himself. (PageID.103.)  J.M.G. testified that he had two worlds: a sane world and an insane world. (PageID.108.) He was able to switch from one world to the other and generally stayed in the sane world at school. (PageID.108.) In the insane world he runs around, runs into walls, cries, laughs,

7

and talks to himself. (PageID.108.) He hears voices, and sometimes loses control. He has difficulty remembering things. (PageID.111, 122.) After summarizing the testimony, the ALJ found these allegations were not credible. (PageID.69.) Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff's only challenge to this determination is that after stating he found the testimony not to be credible, the ALJ failed to articulate the reasons behind his determination. (PageID.827–829.) While the Court agrees the ALJ could have better identified his credibility analysis, the ALJ's analysis is sufficiently clear for meaningful review. Indeed, the ALJ examined in great detail the evidence in this matter when making his credibility determination. (PageID.69–71). This determination is supported by substantial evidence. For example, in an assessment finding Plaintiff no longer was eligible for special education, a social worker noted that J.M.G. "no longer meets the eligibility requirement to receive special education programs and services . . . in the social emotional area. [He] interacts with peers, follows teacher directives, and no longer displays the temper tantrums he was having. He is an active participant in the classroom." (PageID.470.) It was noted that J.M.G. liked to help at home, had a sense of humor, participates,

and liked the computer. (PageID.468.) Ms. Bradley also indicated she had no concerns. (PageID.467.) At a May 22, 2012, examination with Dr. Glen Peterson, a state examiner, it was noted that J.M.G. rocked back and forth through most of the session. (PageID.512.) However, during the examination, J.V.M was friendly and polite. He was able to recite the month and year, and knew the days of the week. He could repeat six digits forward and three digits backward. (PageID.514.) There was no evidence of delusions or persecutory trends. (PageID.514.) He had well organized thought processes, no evidence of any unusual or abnormal perceptual events, was able to count backwards from ten, and recite every other letter of the alphabet. (PageID.515.) He appeared to be "a fairly happy boy, relatively free of emotional problems." (PageID.515.) Consultative examiner Dr. Wayne Kinzie's October 9, 2013, mental status exam was generally similar. (PageID.541–542.) The ALJ also noted that in his daily activities, J.M.G. "understood simple jokes, cares for [himself] and belongings, likely to print and draw, plays video games, rides [a] two wheel bicycle, runs around house, and has a couple of really close friends." (PageID.71.) In sum, the ALJ's credibility determination complies with the relevant legal standard and is supported by substantial evidence. Accordingly, this argument is rejected.

  **2. The ALJ Was Not Required to Obtain a Subsequent Consultative Examination.**

At the administrative hearing, Plaintiff's counsel asked J.M.G. whether he ever heard someone else talking who was not there, a "fake" person. J.M.G. answered in the affirmative. (PageID.111.) He stated he hears them a couple times a month. (PageID.112.) The voices were a part of why he would run into walls. (PageID.112) He had not told a doctor about it, however, because he was "fine" when in public. (PageID.111.) At the conclusion of the hearing, Plaintiff's counsel asked for an updated consultative examination for further evaluation of this condition.

(PageID.128.)  It is undisputed that the ALJ did not order another examination.  Plaintiff argues the ALJ abused his discretion in doing so.

As Plaintiff acknowledges, an ALJ has the discretion to order a claimant to undergo an additional consultative examination. The regulations clearly state that if there is insufficient evidence to determine if a claimant is disabled, then the ALJ "may ask you [the claimant] to undergo a consultative examination." 20 C.F.R. § 404.1520b(c)(1), (3).  Here, the ALJ did not abuse his discretion by deciding that there was sufficient evidence of record upon which to make his determination, thereby making it unnecessary to require J.M.G. to undergo additional testing. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (noting the ALJ has discretion to decide whether additional medical evidence is needed and will be paid for at the government's expense).

Plaintiff claims "the record was devoid of analysis" of J.M.G.'s hallucinations. (PageID.831.)  It is surprising that Plaintiff would make this claim, however, as Plaintiff admits on the preceding page that Ms. Bradley told Dr. Kinzie about her concerns that J.V.M was seeing and hearing things that were not there.  (PageID.830.)  The doctor noted that Plaintiff "reports abnormal perceptual experiences, as noted above, that is auditory experiences which seem on the surface to be hallucinatory in nature.  However, at this age, that is difficult to clearly determine.  There were no observations of any such experiences during my evaluation with him."  (PageID.542.)  Thus the record is not, as Plaintiff claims, "devoid of analysis" on this point.  The ALJ thoroughly discussed this report, including the discussion of hallucinations, but correctly noted that there was "uncertainty" about this disorder. (PageID.72.)  The ALJ gave "significant weight" to this opinion and Plaintiff does not argue the ALJ could not rely on it.  (PageID.72.)  As a result, the ALJ did not abuse his discretion in deciding he had sufficient evidence to make his determination.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Comm'r of Soc. Sec.*, 1999 WL 1336109, at *2 (6th Cir. 1999); *Leal v. Comm'r of Soc. Sec.*, No. 3:14 CV 285, 2015 WL 731311, at *2 (N.D. Ohio Feb. 19, 2015).

A separate judgment shall issue.


Dated:      December 21, 2016             /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE